UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FCA US LLC,

        Plaintiff,                             Case No. 17-cv-13972
                                                               Hon. Mark A. Goldsmith

vs.

PATREA BULLOCK,

        Defendant.
_____/

**OPINION & ORDER
DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
(Dkt. 2)**

This matter is before the Court on Plaintiff FCA US LLC's ("FCA") motion for a temporary restraining order (Dkt. 2). The motion has been fully briefed – including several supplemental filings from both parties – and a hearing was held on January 5, 2018. For the reasons that follow, the Court denies the motion.

**I. BACKGROUND**

Defendant Patrea Bullock is an attorney who previously worked for two law firms in California, Universal & Shannon, LLP ("U&S") (August 2016 – May 2017) and Gates, O'Doherty, Gonter & Guy LLP ("GOGG") (June 2017 – October 2017). Compl. ¶¶ 8, 20 (Dkt. 1). FCA was a client of both U&S and GOGG, and during Bullock's time at these law firms, she worked on dozens of breach of warranty cases for FCA. Id. ¶¶ 9, 21. FCA alleges that she "personally determined and advised FCA US about how to respond regarding particular claims, evaluated the defenses available to FCA US, developed overall defense strategy, and engaged in regular contact with FCA US regarding the defenses and strategies of various cases." Id. ¶ 11. She participated

1

in all aspects of these breach of warranty cases, including depositions, id. ¶¶ 14, 23; drafting responses and objections in discovery, ¶¶ 15, 25; and settlement discussions, ¶¶ 17, 22. In April 2017, Bullock attended a training program conducted by FCA's inside and outside counsel, and signed a confidentiality agreement (the "Confidentiality Agreement") regarding certain client confidential information learned about FCA. Id. ¶ 19; Def. Supp. Br. at 3 (Dkt. 29); see also Confidentiality Agreement, Ex. A to Pl. Reply (Dkt. 17-2). Bullock was privy to "privileged, confidential, and/or sensitive information." Id. ¶ 15.

Bullock stopped working for GOGG in October 2017 and opened her own practice. Id. ¶ 30. She advertised herself as an "expert lemon law attorney serving Northern California." See Website Print-out, Ex. B to Pl. Reply (Dkt. 17-3). Prior to leaving GOGG, Bullock apparently transferred data from her work computer to a USB device, including folders labeled, "Cases," "Helpful Info," "Lemon Law Cases," "My Business," and "Releases." See Declaration of Michael Bandemer ¶ 8f (Dkt. 24).

On November 20, 2017, Bullock filed a California lawsuit against FCA, alleging breach of warranty on behalf of an owner of an FCA-manufactured vehicle, Brown v. FCA US LLC, No. 34-2017-00222086 (Super. Ct. of Cal., Sacramento). Id. ¶ 31. FCA then filed the instant complaint, alleging claims for breach of contract, misappropriation of trade secrets, violation of federal trade secret laws, breach of fiduciary duty, and injunctive relief. Since then, Bullock has filed at least two other breach of warranty lawsuits against FCA in California. See Pl. Supp. Br. (Dkt. 34) (noting Arias v. FCA US, LLC, No. FCS050161 (Super Ct. of Cal., Fairfield)); Pl. Supp. Notice (Dkt. 37) (noting Lewis v. FCA US LLC, No. CV-18-240 (Super. Ct. of Cal., Yolo)).

FCA filed a motion for a temporary restraining order, requesting that the Court enjoin Bullock from filing breach of warranty lawsuits against FCA, destroying any records or documents

in her possession which were obtained from FCA which relate to breach of warranty cases, and divulging any of FCA's confidential or proprietary information, among other requests. Pl. Mot. for TRO at 15-16 (Dkt. 2).

## II. ANALYSIS

To determine whether to grant a preliminary injunction or temporary restraining order, a district court must consider: (i) whether the movant has a strong likelihood of success on the merits; (ii) whether the movant would suffer irreparable injury without the injunction; (iii) whether issuance of the injunction would cause substantial harm to others; and (iv) whether the public interest would be served by the issuance of the injunction. Baker v. Adams Cty./Ohio Valley Sch. Bd., 310 F.3d 927, 928 (6th Cir. 2002). These four factors "are factors to be balanced, not prerequisites that must be met." Hamad v. Woodcrest Condo. Ass'n, 328 F.3d 224, 230 (6th Cir. 2003).

### A. Likelihood of success on the merits

FCA argues that it has shown a strong likelihood of success on the merits, because Bullock has breached her fiduciary duties, misappropriated FCA's trade secrets, breached the Confidentiality Agreement, or will do so in the future. Pl. Mot. at 10. Bullock contends that FCA has failed to show that Bullock has learned any non-public information that could not be gained simply by working opposite FCA's defense attorneys. Def. Resp. to Supp. Br. at 3-4 (Dkt. 33).

The Court finds that FCA has not, at this stage, shown a strong likelihood of success on the merits. FCA claims that Bullock has breached the fiduciary duties owed to FCA by representing the Browns and other plaintiffs. It is true that the law presumes that where former and current representations are substantially related, information learned from the client in the former representation will be used in the later representation. See, e.g., In re Marks & Goergens,

3

Inc., 199 B.R. 922, 925 (E.D. Mich. 1996) (if a substantial relationship exists between an attorney's former and present representations, "a presumption is created that the attorney will use information received from the former client in the ethical obligation to vigorously represent the present client, thus violating the ethical obligations of loyalty and confidence"). However, this presumption only obtains where the representations are substantially related.

FCA points out that Bullock represented FCA in at least two breach of warranty actions involving Dodge Darts, the vehicle at issue in Brown, Pl. Supp. Br. at 4-5 (Dkt. 29); Jeep Grand Cherokees, the vehicle at issue in Arias, Pl. Supp. Br. at 1-2 (Dkt. 34); and at least six cases involving a Chrysler 200, the vehicle at issue in Lewis, Pl. Supp. Notice at 1 (Dkt. 37). FCA has also provided the complaints from Bullock's current representations, and the complaints from cases that Bullock worked on while representing FCA.

However, it offers no more than conclusory allegations that, because these cases involved the same vehicles, Bullock must be using confidential information in her current representations. The complaints themselves consist largely of boilerplate language and, at any rate, do not shed light on what is truly at issue in each case. Without more, this Court will not conclude at this stage that Bullock's former and current representations are substantially related – particularly where the California judges in each of these cases can make such a decision, based on full briefing and consideration of the record before them, if FCA were to bring a motion to disqualify.

Additionally, it must be stressed that FCA is requesting here that Bullock be enjoined from "filing breach of warranty lawsuits on behalf of plaintiff and against FCA US." Pl. Mot. at 15. Although FCA claims that its own policies and procedures apply to all of its breach of warranty claims and "do[] not vary from case-to-case," Pl. Supp. Br. at 2-3, this does not mean that all breach of warranty cases embrace the same subject matter or are all substantially related. Given

4

that such cases can turn on multiple different issues, there is no basis for concluding that any breach of warranty action filed by Bullock on behalf of a client is substantially related to her former representation of FCA, so as to give rise to the presumption of using client information.

Nor does FCA's misappropriation of trade secrets claim seem promising. FCA alleges that its "breach of warranty strategies and tactics" constitute trade secrets under federal and Michigan law. But a trade secret must not only be a "type[] of . . . business . . . information, including. . . processes [and] procedures," it must be something that "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person[.]" 18 U.S.C. § 1839(3); see also Mich. Comp. Laws § 445.1902(d) (similar definition). Much of the information that FCA claims is confidential appears to be readily discernable by a plaintiff's attorney who has opposed FCA in multiple litigations. An attorney working in the field against FCA would learn easily how California law advantages or disadvantages an auto company, what difficulties FCA has experienced with certain expert issues, or what its settlement strategy is.

FCA does not fare better with respect to its breach of contract claim. The Confidentiality Agreement provides that "Confidential Information" – that is, "non-public documents and information disseminated [during the training program] that relate to the defense of FCA US" – "shall be used solely for purposes of the defense of California warranty actions against FCA US." See Confidentiality Agreement. In its supplemental brief, FCA elaborates that the "confidential, privileged, and trade secret information" consisted of mental impressions of "plaintiff and FCA witnesses [and] experts," strategies for dealing with certain plaintiff firms, strategies on how it

5

handles cases, why it settles certain cases, how it responds to discovery, its own perceived vulnerabilities, and "pressure points Plaintiff firms exploit." Pl. Supp. Br. at 4 (Dkt. 29).[1]

However, there is no indication that Bullock has used any of this information presented at this training program for a purpose other than FCA's defense and thereby breached the Confidentiality Agreement. Nor has there been any showing that she will necessarily use such information in the future. To the extent an attorney is presumed to use confidential information from a client in a subsequent representation, the Court reiterates that this presumption applies only when representations are substantially related. And, as previously stated, much if not all of this information seems readily available to any attorney who litigates against FCA.

### B. Irreparable injury, substantial harm to others, and public interest

FCA argues that it will suffer irreparable harm because the damages flowing from "unfair competition" would be difficult to compute, and because the disclosure of confidential information can never be remedied. Pl. Mot. at 13-14. It is true that, if Bullock does in fact have confidential information from FCA that she subsequently uses against it in litigation, damages flowing from such harm would be difficult to quantify and would constitute irreparable harm. See Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992) ("[A] plaintiff's harm is not irreparable if it is fully compensable by money damages. However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate."). However, FCA does have other adequate – and actually better – remedies. FCA may move to

---

[1] FCA also submitted an affidavit stating that FCA shared "its strengths and weakness as it relates to California law; perceived problems with the deposition testimony or availability of FCA US representatives in California warranty litigation matters; discovery orders that FCA US would prefer to avoid complying with by settlement with plaintiffs; and the strategies used by plaintiffs' attorneys that are most effective at driving FCA US to settlement." Decl. of Kris Krueger, Ex. A to Pl. Supp. Br., ¶ 13 (Dkt. 29-2).

disqualify Bullock in any of the litigations pending in California. It may contact the California bar and ask that it take action against Bullock. A restraining order from this Court is not FCA's only avenue of relief. Thus, FCA can avoid much of the harm that it fears through other means and avoid what it claims is irreparable harm.

Further, the issuance of temporary restraining order would cause harm to others, i.e. to Bullock's existing clients and any other individuals who may want to hire her to represent them in cases against FCA. Those individuals have a presumptive right to an attorney of their choosing, and if they believe that Bullock is the best representative for them, they should be permitted to hire her.

Finally, the public interest would not be well served by the issuance of a temporary restraining order. As stated above, the public in California has a right to choose their attorneys, and prohibiting them from choosing Bullock in <u>any</u> breach of warranty case against FCA, without regard to the similarities between their individual case and whatever confidential information Bullock may have, is not warranted. The public would be better served by having the trial judges in California consider whether, in the context of the particular cases before them, Bullock has violated or likely will violate her ethical obligations. The temporary restraining order requested by FCA is far too broad. <u>See</u> <u>Seto v. Thielen</u>, No. 10-00351, 2010 WL 2612603, at *2 (D. Haw. June 28, 2010) (denying motions for TRO and preliminary injunction where "the requested injunction is simply overbroad" and "[t]he relief requested simply does not fit the alleged violations.").

Accordingly, the balance of the four factors weighs against granting the temporary restraining order.

### III. CONCLUSION

For the reasons provided, Plaintiff FCA's motion for a temporary restraining order (Dkt. 2) is denied.

SO ORDERED.

Dated: February 26, 2018  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 26, 2018.

s/Karri Sandusky
Case Manager