UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FCA US LLC,

        Plaintiff,

vs.

PATREA BULLOCK,

        Defendant.
_____/

Case No. 17-cv-13972
Hon. Mark A. Goldsmith

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 10)**

This matter is now before the Court on Defendant Patrea Bullock's motion to dismiss based on jurisdiction and venue (Dkt. 10). The motion is fully briefed, and a hearing was held on January 5, 2018. For the following reasons, the Court denies Bullock's motion.

## I. BACKGROUND

Defendant Patrea Bullock is an attorney who previously worked for two law firms in California (Universal & Shannon, LLP ("U&S") and Gates, O'Doherty, Gonter & Guy LLP ("GOGG")). Compl. ¶¶ 8, 20 (Dkt. 1). Plaintiff FCA was a client of both U&S and GOGG, and during Bullock's time working for these law firms, she worked on dozens of breach of warranty cases for FCA. Id. ¶¶ 9, 21.

On April 19, 2017, Bullock attended an FCA "Warranty Litigation Trial School." Id. ¶ 19; see also FCA US California Warranty Litigation Trial School Confidentiality Agreement ("Confidentiality Agreement"), Ex. 1-A to Compl. (Dkt. 1-2). She signed a confidentiality agreement, which stated:

> This Confidentiality Agreement and any dispute or claim arising out of or in connection with it will be exclusively governed by and construed in accordance with the laws of the state of Michigan. Any dispute or claim concerning this Agreement may be brought only in Michigan state or federal courts and the undersigned attendee hereby submits to the exclusive jurisdiction of those courts.

Confidentiality Agreement.

After Bullock left GOGG in October 2017, she opened her own law firm. Compl. ¶ 30. In November 2017, she served FCA with a breach of warranty case in California, Brown v. FCA US LLC, No. 34-2017-00222086 (Super. Ct. of Cal., Sacramento), where Bullock was listed as the plaintiff's counsel of record. Id. ¶ 31. FCA then filed the instant complaint, alleging claims for breach of contract, misappropriation of trade secrets, violation of federal trade secret laws, breach of fiduciary duty, and injunctive relief. Bullock now challenges this Court's exercise of subject matter and personal jurisdiction and objects to venue, as well.

## II.  STANDARDS OF REVIEW

In considering whether to dismiss a complaint under Rule 12(b)(1) due to lack of subject-matter jurisdiction, the plaintiff bears the burden of proving the existence of subject-matter jurisdiction. Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996); Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). Challenges to subject-matter jurisdiction fall into two general categories: "facial attacks" — which argue that the pleading allegations are insufficient — and "factual attacks" — which challenge the factual veracity of the allegations. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). On a motion raising a facial attack, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." Id. In reviewing a motion raising a factual attack, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

When presented with a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a court may decide the motion on the basis of written submissions and affidavits alone. See Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). When a court decides to pursue that path, the plaintiff must meet a "relatively slight" burden of a prima facie showing that personal jurisdiction exists to survive the motion. Estate of Thompson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 360 (6th Cir. 2008). The plaintiff can do so by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." Lexon Ins. Co. v. Devinshire Land Dev., LLC, 573 Fed. App'x 427, 429 (6th Cir. 2014). The court must view the pleadings and affidavits in the light most favorable to the plaintiff, Estate of Thompson, 545 F.3d at 360, and may only dismiss if the specific facts alleged by the plaintiff collectively fail to make a prima facie case for jurisdiction, CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). If a court has federal question jurisdiction over a case, personal jurisdiction exists if (i) the state's long-arm statute applies to the defendant and (ii) the exercise of personal jurisdiction does not violate due process. Cmty. Trust Bancorp. v. Cmty. Trust Fin. Corp., 692 F.3d 469, 471 (6th Cir. 2012).

## III. ANALYSIS

Bullock argues that this action should be dismissed, because (i) the Court lacks subject-matter jurisdiction; (ii) the Court lacks personal jurisdiction over her; and (iii) venue is improper. See generally Def. Mot. (Dkt. 10).

### A. This Court Has Subject-Matter Jurisdiction

Bullock claims that the Court lacks subject matter jurisdiction, because FCA does not sufficiently allege a claim arising under federal law, as required by 28 U.S.C. § 1331. FCA has

alleged that Bullock violated the Defend Trade Secret Act, 18 U.S.C. § 1836(b). Bullock claims that FCA has failed to properly identify a trade secret, on the theory that its strategy on how to respond, defend, and/or settle breach of warranty cases are not trade secrets – it is information that is readily discoverable by any plaintiff's attorney who files multiple lawsuits against FCA. Def. Mot. at 8-9.

"In order to trigger federal-question jurisdiction under § 1331, a lawsuit must satisfy the well-pleaded complaint rule. Under this rule, a federal question must appear on the face of the complaint[.]" Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 554 (6th Cir. 2012). FCA has met this standard. It alleges that confidential and privileged information about its defense of breach of warranty cases constitute trade secrets within the meaning of 18 U.S.C. § 1839(3), and that Bullock is misappropriating these alleged trade secrets. Compl. ¶¶ 53, 55-56. Whether this Court ultimately determines that these do not constitute trade secrets will not divest this Court of jurisdiction; it will simply mean that FCA's claim fails on the merits. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) ("Jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.") (internal quotations, ellipses, and alterations omitted).

Because the Court has federal-question jurisdiction over this matter, it need not address Bullock's argument regarding a lack of diversity jurisdiction.

### B.     This Court Has Personal Jurisdiction over Bullock

"[P]ersonal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp., 692 F.3d 469, 471 (6th Cir. 2012) (quoting Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002)) (alterations

4

omitted). Bullock argues that this Court lacks personal jurisdiction over her, because the requirements of Michigan's long-arm statute, Mich. Comp. Laws § 600.701, have not been met, and because the exercise of jurisdiction does not satisfy due process. Def. Mot. at 11.

### i. Michigan's Long-Arm Statute

FCA argues that this Court has personal jurisdiction over Bullock pursuant to Mich. Comp. Laws § 600.701(3), which provides that personal jurisdiction can be established by "[c]onsent, to the extent authorized by the consent and subject to the limitations provided in section 745." Section 745 in turn provides, in relevant part:

> If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur:
>
> (a) The court has power under the law of this state to entertain the action.
>
> (b) This state is a reasonably convenient place for the trial of the action.
>
> (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
>
> (d) The defendant is served with process as provided by court rules.

Mich. Comp. Laws. § 600.745(2). Bullock argues that the second and third requirements of Section 745 have not been met.

First, Bullock argues that Michigan is not a reasonably convenient place for the trial, because "all witnesses, evidence and events took place and/or are located in California." Def. Mot. at 12. FCA responds that Michigan is a reasonably convenient location, because: (i) all of the FCA US legal department representatives are located in Michigan, (ii) representatives of Bullock's former employers have agreed to attend proceedings in Michigan if needed, (iii) evidence from

these employers can be utilized in Michigan, and (iv) Michigan substantive law will be applied. Pl. Resp. at 10 (Dkt. 15).

"[A] determination of what is a 'reasonably convenient' place for trial requires a determination whether Michigan is a logical venue that is well-suited for the purpose of deciding this action." Lease Acceptance Corp. v. Adams, 724 N.W.2d 724, 734 (Mich. Ct. App. 2006). The following factors provide a framework for determining whether Michigan is a logical venue:

> (1) the private interest of the litigants, including the location of the parties, ease of access to sources of proof, the distance from the incident giving rise to the litigation, and other practical problems that contribute to the ease, expense, and expedition of the trial; (2) matters of public interest, including consideration of which state law will govern the case, potential administrative difficulties, and people concerned by the proceeding; and (3) reasonable promptness on the part of the defendants in raising the issue of forum non conveniens dismissal.

Id. at 735. Here, consideration of these factors supports FCA's position. Although Bullock does not live in Michigan, FCA is located here, proof can easily be accessed here, and Michigan state law will be applied to the claims that concern the Confidentiality Agreement. See Lease Corp. of Am. v. EZ Three Co., LLC, No. 297704, 2011 WL 4580595, at *4-*5 (Mich. Ct. App. Oct. 4, 2011) (finding that Michigan was a reasonably convenient place for trial even where the defendant "lives 1355 miles from Pontiac, Michigan 'and traveling that far is certainly not convenient, comfortable, and/or affordable for this 73 year old Texas retired public school educator'"). Michigan is, therefore, a reasonably convenient and logical venue.

Second, Bullock argues that the Confidentiality Agreement was obtained by an abuse of economic power, because her former employer, U&S, required her to sign the agreement in order to attend a required training. Def. Mot. at 12-13. In her supporting declaration, she states that it was her "understanding and belief that to continue working for U&S [she] had to attend this

6

School," and that she "was told that to attend the School [she] had to sign the Agreement." Bullock Decl., Ex. 1 to Def. Mot., ¶¶ 24-25 (Dkt. 10).

Even accounting for a disparity of bargaining power between Bullock and U&S,[1] the Court does not find that the agreement as to the forum was obtained by an abuse of economic power. "When a party . . . voluntarily agrees to something in an attempt to obtain employment, they are not being 'forced' to do anything[.]" Cooper v. MRM Investment Co., 367 F.3d 493, 504 (6th Cir. 2004) (quoting EEOC v. Frank's Nursery & Crafts, 966 F. Supp. 500, 504 (E.D. Mich. 1997)) (alterations omitted); see also Williams v. Parkell Prods., Inc., 91 Fed. App'x 707, 709 (2d Cir. 2003) (finding that employer's threat to terminate plaintiff's employment if he did not agree to arbitrate Title VII claims did not constitute duress). If the Court were to agree with Bullock that her agreement was obtained due to an abuse of economic power, "practically every condition of employment would be an 'adhesion contract' which could not be enforced because it would have been presented to the employee by the employer in a situation of unequal bargaining power on a 'take it or leave it' basis." Cooper, 367 F.3d at 505 (quoting Morrison v. Circuit City Stores, Inc., 70 F. Supp. 2d 815, 822 (S.D. Ohio 1999)).

Accordingly, the requirements of Section 745 are met, such that the Michigan long-arm statute is satisfied.

### ii. Due Process

---

[1] Bullock declares that it was her "understanding and belief" that she would need to attend the Training School to maintain her employment, and that she had no power to negotiate the Confidentiality Agreement, but does not state that anyone at U&S or FCA ever told her this. See Bullock Decl. ¶¶ 24, 26. Additionally, the Court notes that Bullock left U&S in May 2017 – one month after signing the Confidentiality Agreement – to work as an independent contract attorney for GOGG. Compl. ¶¶ 8, 20. This suggests that the bargaining power was not as unequal as Bullock contends.

7

Even though FCA is able to show that Michigan's long-arm statute permits the exercise of jurisdiction over Bullock, it must also show that such exercise of jurisdiction comports with due process. Bullock contends that it does not, because the exercise of jurisdiction is not reasonable, and she had no fair warning that, by filing a lawsuit against FCA in California, she would be subject to jurisdiction in Michigan. Def. Mot. at 10-11.

"State and federal courts are virtually uniform in the conclusion that enforcement of a forum selection clause that was validly entered into does not violate due process as long as a party will not be deprived of its day in court." Lease Acceptance Corp., 724 N.W.2d at 736; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n. 14 (1985) ("[P]arties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process.") (internal citations and quotations omitted); H.H. Franchising Sys., Inc. v. Brooker-Gardner, No. 14-651, 2015 WL 4464774, at *3 (S.D. Ohio July 21, 2015) ("The presence of a valid and enforceable forum-selection clause obviates the need to conduct a due-process and minimum contacts analysis because such a clause acts as consent to jurisdiction in the contracted-for forum.").

"A forum selection clause should be upheld absent a strong showing that it should be set aside." Wong v. PartyGaming Ltd., 589 F.3d 821, 828 (6th Cir. 2009). In determining whether a forum-selection clause is enforceable, a court examines (i) whether the forum-selection clause was obtained by fraud, duress, or other unconscionable means; (ii) whether the selected forum would ineffectively or unfairly handle the suit; and (iii) whether the selected forum would be "so seriously inconvenient" such that requiring the party seeking to avoid enforcement to litigate there would be unjust. Id.

8

An examination of these factors shows that the forum-selection clause is enforceable. Bullock does not allege that it was obtained by fraud, and as discussed above, there was no abuse of economic power or other unconscionable method that would suggest that she did not validly enter into the Confidentiality Agreement. Bullock is an experienced attorney, and the Confidentiality Agreement is only one page in length; surely she understood what she had agreed to by signing it.[2] Second, Bullock has made no argument as to why this Court would ineffectively or unfairly handle the suit. And as to the third factor, it would not be "so seriously inconvenient" for Bullock to litigate here that it would result in injustice. As discussed above, many of the individuals involved in the case either reside in Michigan or have indicated their willingness to attend proceedings here; proof can be easily accessed here; and Michigan law governs the Confidentiality Agreement. While it may be inconvenient for Bullock to litigate in Michigan from California, a finding of unjust or unreasonable enforcement under the third prong of the test "must be based on more than mere inconvenience of the party seeking to avoid the clause." Id. at 829.

Because the forum-selection clause was validly entered into and is enforceable, it would not violate due process for this Court to exercise personal jurisdiction over Bullock.

The Court, therefore, has personal jurisdiction over Bullock.

### C. Venue is Proper in this Court

---

[2] Bullock argues that the Confidentiality Agreement is "very narrow" and "did not cover every claim FCA US may ever assert against Bullock." Def. Reply at 4 (Dkt. 19). However, FCA alleges that Bullock breached the Confidentiality Agreement by using FCA's confidential and proprietary information; this is certainly a "dispute or claim concerning this Agreement," for which Bullock agreed to the jurisdiction of Michigan courts. The other claims all similarly concern Bullock's alleged utilization of proprietary and confidential information, and "where a tort claim is substantially related to the contract claim in terms of factual and legal issues, the forum selection clause covers the tort claim as well." Travelers Prop. Cas. Co. of Am. v. Centimark Corp., No. 04-916, 2005 WL 1038842, at *2 (S.D. Ohio May 3, 2005).

Lastly, Bullock argues that venue is not proper in this Court. Def. Mot. at 13. "As with personal jurisdiction, [a] [d]efendant may waive objection to venue, and courts will generally enforce waivers made by agreement." ViSalus, Inc. v. Smith, No. 13-10631, 2013 WL 2156031, at *8 (E.D. Mich. May 17, 2013) (finding that an enforceable forum-selection clause was a valid waiver of the requirement of proper venue). Bullock consented to venue in this Court by signing the Confidentiality Agreement. Venue is, therefore, proper in this Court.

## IV. CONCLUSION

For the foregoing reasons, Defendant Bullock's motion to dismiss (Dkt. 10) is denied.

SO ORDERED.

Dated: April 19, 2018  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 19, 2018.

  s/Karri Sandusky
  Case Manager