UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FCA US LLC,

       Plaintiff,

vs.

PATREA BULLOCK,

       Defendant.
_____/

Case No. 17-cv-13972
Hon. Mark A. Goldsmith

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL
## (Dkt. 53)

This matter is before the Court on Plaintiff FCA US LLC's ("FCA") motion to compel full and complete responses to FCA's first set of discovery requests and electronic discovery (Dkt. 53). The motion has been fully briefed, and a hearing was held on July 17, 2018. For the reasons set forth below, the Court grants FCA's motion in part and denies it in part.

### I. BACKGROUND

Defendant Patrea Bullock is an attorney who previously worked for two law firms in California: Universal & Shannon, LLP ("U&S") (August 2016–May 2017) and Gates, O'Doherty, Gonter & Guy LLP ("GOGG") (June 2017–October 2017). FCA US LLC v. Bullock, No. 17-13972, 2018 WL 1064536, at *1 (E.D. Mich. Feb. 26, 2018). FCA was a client of both U&S and GOGG, and during Bullock's time at these law firms, she worked on dozens of breach-of-warranty cases for FCA. Id. Bullock stopped working for GOGG in October 2017 and opened her own practice, advertising herself as an "expert lemon law attorney serving Northern California." Id. In November 2017, Bullock filed a lawsuit against FCA in California, alleging breach of warranty on

1

behalf of an owner of an FCA-manufactured vehicle. Id. FCA then filed the instant lawsuit, alleging that Bullock breached her contract with FCA, misappropriated trade secrets, violated federal trade secret laws, and breached her fiduciary duty to FCA.

In December 2017, Michael Bandemer, the national practice leader for Berkeley Research Group, LLC's Discovery and Forensic Technology Services group, performed an examination of the laptop computer used by Bullock while she was employed as an independent contract attorney for GOGG. Bandemer Decl., Ex. A to Pl. Mot. (Dkt. 53-2). Bandemer discovered that Bullock used ten USB storage devices; three personal e-mail and/or cloud storage accounts; and an online legal case management software known as MyCase. Id. ¶ 8. On October 31, 2017, a USB was plugged into the computer and several folders were created, including "CASES," "HELPFUL INFO," "LEMON LAW CASES," "MY BUSINESS," and "RELEASES." Id. ¶ 8(f). That same day, Dropbox was uninstalled and the recycle bin was emptied, deleting effectively all personal and work files. Id. ¶ 8(g). According to Bandemer, this is "consistent with Ms. Bullock operating and/or preparing to operate her new legal practice while being employed at GOGG and then obfuscating her activities by deleting client files from her computer" and "consistent with the transfer of GOGG client data to USB storage devise and personal cloud e-mail/storage/management accounts." Id. ¶ 9.

FCA served Bullock with its first set of discovery requests on March 16, 2018. Bullock responded on April 27, 2018, and, according to FCA, failed to provide full and complete responses. Pl. Mot. at 3-4. Bullock objected to many of the discovery requests, but nonetheless produced 1,345 electronic documents and/or folders responsive to FCA's discovery requests. Def. Resp. at 4 (Dkt. 57). Bullock contends that these documents are "all documents relating in any manner to [her] representation of FCA US that are in her custody and control[.]" Id. Bullock admits that in

the past, she had other files, but says that they were deleted before she left GOGG and she no longer has access to them. Id. at 7. Bullock has also represented that the ten USB devices referenced in the Bandemer Declaration are no longer in her custody or control, and have not been since prior to November 8, 2017. Def. Resp. to Pl. 1st Set of Discovery Requests to Def., Ex. D to Pl. Mot., at 2 (Dkt. 53-5).

FCA claims that it is entitled to know whether any of the external hard drives connected to Bullock's GOGG laptop were ever connected to Bullock's business/personal computers. Pl. Mot. at 13. It asserts that "[j]ust because [Bullock] says that everything was deleted, or she did not share the information," is "not good enough." Id. FCA seeks an order requiring Bullock to produce her business/personal computer(s) and cell phone(s) for imaging. Essentially, a computer forensic expert would inspect, copy, and create a mirror image of Bullock's computer equipment. The expert would then recover all available documents, including any deleted files; Bullock would review the records for privilege and responsiveness; and Bullock would then provide all responsive and non-privileged documents. Id. at 11-12. FCA also asks that the Court strike Bullock's objections to certain of FCA's Requests for Discovery (Nos. 4-7) and require her to provide full and complete responses. Id. at 16.

## II. STANDARD OF DECISION

Federal Rule of Civil Procedure 26 allows for broad discovery in litigation, including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). When ruling on discovery-related motions, the district court has broad discretion to determine the proper scope of discovery, including whether a "discovery request is too broad and oppressive." Surles ex rel. Johnson v. Greyhound Lines, Inc.,

474 F.3d 288, 305 (6th Cir. 2007); Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 402 (6th Cir. 1998).

The Federal Rules place specific limitations on electronically stored information ("ESI"), providing that a party "need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). On a motion to compel discovery,

> the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Id. Rule 26(b)(2)(C) provides that the Court must limit the frequency or extent of discovery that is otherwise allowed if it determines that (i) the discovery is unreasonably cumulative or duplicative, or can more easily be obtained from another source; (ii) the party seeking discovery has had ample opportunity to obtain the information; or (iii) the proposed discovery is outside the scope permitted under Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

### III.     ANALYSIS

**A. Timeliness of Bullock's Objections**

As an initial matter, the Court will address FCA's argument that Bullock waived any objections to discovery requests because her April 27, 2018 responses were untimely. See Pl. Mot. at 14. FCA served its first set of discovery requests on March 16, 2018, and the parties' Rule 26(f) conference concluded on March 21, 2018. Thus, FCA says, Bullock's responses were due on April 20, 2018. In response, Bullock states that the conference took place on March 28, 2018, and her responses were therefore due on April 27, 2018. Def. Resp. at 14. But if FCA is correct regarding the due date, she asks that the Court find her error to be excusable. Id. at 15.

4

A party who receives a discovery request must respond within thirty days after being served or, if the request was delivered under Rule 26(d)(2), within thirty days after the parties' first Rule 26(f) conference. Fed. R. Civ. P. 34(b)(2)(A). "As a general rule, failure to object to discovery requests within the thirty days provided by Rule 33 and 34 constitutes a waiver of any objection." Napier v. Cty. of Washtenaw, No. 11-13057, 2013 WL 1395870, at *4 (E.D. Mich. Apr. 5, 2013) (quoting Carfagno v. Jackson Nat'l Life Ins. Co., No. 99-18, 2001 WL 34059032, at *1 (W.D. Mich. Feb. 13, 2001)). However, courts will "examine the circumstances of each case, including the reason for tardy compliance, prejudice to the opposing party, and the facial propriety of the discovery requests to determine whether enforcement of the waiver is equitable." Id.

Here, the Court finds that finding Bullock's objections waived would be inequitable. Bullock was only a week late in her responses, and she appears to have miscalculated the due date. FCA has not even attempted to argue that it was prejudiced in any way by the delay. The Court will excuse Bullock's tardiness.

**B. Imaging of Bullock's Computer(s) and Cell Phone(s)**

The Court turns now to FCA's request to have Bullock's computer(s) and cell phone(s) imaged. "[D]istrict courts have, for various reasons, compelled the forensic imaging and production of opposing parties' computers." John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008). However, "courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." Id. at 459-460 (quoting Balboa Threadworks, Inc. v. Stucky, No. 05-1157, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006)) (alterations omitted). Courts have cautioned that they are "loathe to sanction intrusive examination of an opponent's computer . . . on the mere suspicion that the opponent may be withholding

discoverable information." Diepenhorst v. City of Battle Creek, No. 05-734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006); see also Goetz, 531 F.3d at 460 ("[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures."); Hawkins v. Center for Spinal Surgery, No. 12-1125, 2015 WL 3795297, at *3 (M.D. Tenn. June 18, 2015) ("CSS has offered no evidence to suggest that Plaintiff transmitted these documents to third parties or that she deleted any document before producing documents in response to discovery in this case."). Nonetheless, "[c]ourts have recognized that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." Hawkins, 2015 WL 3795297, at *1.

FCA relies heavily on Ameriwood Industries, Inc. v. Liberman, No. 06-524, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006), amended by 2007 WL 685623 (E.D. Mo. Feb. 23, 2007), a case where the plaintiff alleged that the defendants – the plaintiff's former employees – improperly used its computers and confidential information to sabotage the plaintiff's business. The plaintiff sought to compel the defendants to produce a mirror image of all computers used by any defendant to conduct business, including home computers. The court agreed to "allow an independent expert to obtain and search a mirror image of defendants' computer equipment," id. at *1, "[c]onsidering the close relationship between plaintiff's claims and defendants' computer equipment, and having cause to question whether the defendants have produced all responsive documents," id. The court had cause to question the defendants' productions because the plaintiff provided the court with an email that a defendant had sent to an employee at Samsung – one of the plaintiff's customers – and had failed to produce it in discovery.

Similarly, in Balboa Threadworks, 2006 WL 763668, the plaintiffs alleged that the defendants "wrongfully copied digital embroidery designs and then sold the designs to at least one third party." The court allowed imaging of a defendant's computer where he had previously stated that he did not use his computer for the embroidery business. In explaining its decision, the court noted, among other reasons, "[t]he fact that Ronald Stucky used one of his computers to draft a document that is related to alleged acts of infringement in this case (albeit created after the date of the alleged infringement) runs contrary to claims that his computers were never used in connection with the embroidery business." Id. at *4. The court also noted, however, that although the plaintiffs alleged that the defendants had deleted information from some of their computers, the plaintiffs produced no affidavits to support their argument. Id.

Here, FCA has submitted a declaration stating that Bullock connected external hard drives to her GOGG laptop and transferred data. Bullock claims that the hard drives no longer exist, and FCA claims that it is entitled to know if the hard drives were connected to her business or personal computers prior to their disappearances. Pl. Mot. at 13. FCA says that Bullock admitted to having FCA US information, "which includes policies and procedures, organizational charts, retention policies and training materials." Id. at 8. FCA also claims in its reply that "Defendant initially stated that she did not misappropriate any FCA US documents, and then subsequently produced over 1,300 documents, [so] there is cause to question whether Defendant has produced all responsive documents." Pl. Reply at 5 (Dkt. 61).

The Court disagrees. With the exception of deleted documents (which the Court will address further below), Bullock says that she gave FCA "every single document of unprivileged FCA information that is in [her] possession[.]" Def. Resp. at 4. Unlike the parties in Ameriwood and Balboa Threadworks, FCA does not have any evidence that Bullock has lied or been

7

disingenuous. All it has is the Bandemer Declaration, which strongly suggests that she took files from the GOGG computer – but Bullock has admitted as such, and has handed over the documents.[1] FCA says that it is "inaccurate and disingenuous" to say that the basis of its motion to compel is that Bullock's responses were "not good enough," Pl. Reply at 5, but the Court fails to see why.

FCA also argues that there is a sufficient nexus between its allegations – that Bullock downloaded trade secrets onto her computer – and the need to obtain a mirror image of Bullock's computer. Pl. Reply at 5. FCA is correct that courts have sometimes permitted searches of an opposing party's computer "where the contents of the computer go to the heart of the case. . . . [W]here, for example, one party demonstrates the likelihood that trade secrets were forwarded to or sent by it." Hedenburg v. Aramark Am. Food Servs., No. 06-5267, 2007 WL 162716, at *2 (W.D. Wash. Jan. 17, 2007); see also Balboa Threadworks, 2006 WL 763668, at *4 ("[I]n similar cases where trade secrets and electronic evidence are both involved, the Courts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation.").

The information that Bullock has on her computer is certainly important to FCA's claims in this litigation. But the mere fact that FCA has asserted a trade secrets claim does not give it free reign to examine all of Bullock's electronic devices. See Scotts Co. LLC v. Liberty Mut. Ins. Co., No. 06-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007) (denying plaintiff's request for

---

[1] Bullock says that the documents in her custody and control were "voluntarily given to her by GOGG to do her job in defending FCA[.]" Def. Resp. at 6. In her Answer, which was filed in April 2018, Bullock admitted "that by virtue of her position as an independent attorney representing FCA US she has some proprietary and confidential information but denies that FCA US or GOGG ever requested its return and denies that Defendant is unwilling to return and/or destroy it now that she has been asked to. The only reason it has not so far been destroyed is because Plaintiff's attorney in this lawsuit requested it not be destroyed." Answer, ¶ 34 (Dkt. 46).

"intrusive examination of its opponent's computer systems on the mere suspicion, based solely on the nature of the claims asserted, that defendant may be withholding discoverable information"). As discussed above, FCA simply asserts that Bullock has done something dishonest, but offers no evidence that would lead the Court to believe she is secretly withholding information. Bullock has handed over more than 1,300 documents and has stated that these are all of the relevant materials that she has.

Further, the Court finds that Bullock's privacy concerns also weigh against permitting imaging of Bullock's devices. The Advisory Committee Notes to Federal Rule 34 also stress that privacy is a legitimate concern in the context of electronic discovery:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34 Advisory Committee's Note on 2006 Amendments. FCA seeks to search Bullock's personal computer and cell phone, where Bullock stated that she puts personal tax documents, documents for her children's colleges, and other personal files.

The Court finds that ordering imaging of Bullock's personal devices is not proportional to the needs of the case.[2] However, Bullock has stated several times that she has not produced deleted

---

[2] FCA argues that under Rule 26(b)(2)(B), Bullock first "must show that the information [sought] is not reasonably available because of undue burden or cost," and "if that showing is made," the court may nonetheless order discovery if FCA shows good cause. Fed. R. Civ. P. 26(b)(2)(B) (emphasis added). However, "[e]ven assuming that [FCA's] request for inspection should have been allowed under Rule 26(b)(2)(B), Rule 26(b)(2)(C) permits a court to 'limit the frequency or extent of discovery otherwise allowed by these rules ... if it determines that ... (i) the discovery sought is unreasonably cumulative or duplicative; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is

files. Def. Resp. at 7 ("While there were other files that have in the past been in Bullock's possession but were deleted prior to leaving GOGG, Bullock no longer has access to those deleted files and their production would be unnecessary and irrelevant to any matter in this case."); Def. Resp. to Pl. 1st Req. for Prod. at 6-7 (Dkt. 53-5) (Bullock objects "to the extent it is requesting information that Defendant does not have access to (i.e., deleted files) based on the fact that said request is not proportional to the needs of the case . . ."). Bullock claims that the fact that the files "were deleted and are no longer available to [her] should satisfy the need for FCA to protect its confidential information." Def. Resp. to Pl. 1st Req. for Prod. at 7.

"It is generally accepted that deleted computer files are discoverable." Ameriwood, 2006 WL 3825291, at *3. Thus, to the extent that Bullock has deleted files in her possession that are non-privileged and responsive to FCA's discovery requests, she must produce those files. If Bullock is unable to access the deleted files herself, she shall retain an independent computer specialist, at FCA's expense, who will recover all deleted files. She must then turn over any recovered files that are non-privileged and responsive to FCA's requests.

Accordingly, the Court will deny FCA's request for mirror imaging, but orders Bullock to supplement her responses to Plaintiff's First Requests for Production, Nos. 4, 5, and 7, to the extent that she has deleted files in her possession that are non-privileged and responsive to FCA's discovery requests.

### IV. CONCLUSION

For the reasons provided, Plaintiff FCA US LLC's motion to compel (Dkt. 53) is granted in part. Bullock must supplement her responses to FCA's requests for production no later than

---

outside the scope permitted by Rule 26(b)(1).'" Hespe v. City of Chicago, No. 13-7240754, 2016 WL 7240754, at *3 (N.D. Ill. Dec. 15, 2016). Rule 26(b)(1), as stated, requires that discovery be proportional to the needs to the case.

February 19, 2019. This Court previously suspended the deadline for filing dispositive motions pending the Court's ruling on the motion to compel. See 8/31/2018 Order (Dkt. 67). The new deadline for filing dispositive motions shall be March 21, 2019.

SO ORDERED.

Dated: January 18, 2019　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge